UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

S.J., an individual;

                Plaintiff,

  -against-

CHOICE HOTELS CORPORATION d/b/a ECONO LODGES OF AMERICA, INC. and WYNDHAM HOTELS & RESORTS, LLC d/b/a HOWARD JOHNSON INN;

                Defendants.

-----------------------------------------------------------------X

CASE NO:

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED ANONYMOUSLY AND BRIEF IN SUPPORT**

## PLAINTIFF S.J.'S MOTION FOR LEAVE TO PROCEED ANONYMOUSLY AND BRIEF IN SUPPORT

The Plaintiff, S.J., through her undersigned counsel, respectfully moves this Court for an order permitting her to bring this action anonymously. The Plaintiff submits the following brief in support of her motion.

### INTRODUCTION

The Plaintiff, S.J., is a survivor of sex trafficking bringing an action for damages against the Defendants, whom are both members of the hospitality industry, under 18 U.S.C §1595 enacted by the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA") and Fla. Stat. § 772.104. The Plaintiff herein seeks leave to proceed anonymously because the disclosure of her identity would cause her undue harm.

For three (3) years, between 2006 and 2009, the Plaintiff was forced to perform commercial sex acts at the hotel premises owned by the above-named Defendants, while enduring brutal physical assaults, psychological torment, verbal abuse, and false imprisonment at

the hands of her trafficker. The Plaintiff refrains from naming her trafficker in this application and in her complaint for the same reasons she herein respectfully requests a protective order and leave to proceed anonymously – fear of retaliation by her trafficker. Furthermore, the Plaintiff's status as a victim of sex trafficking is highly sensitive, personal, and private, information that implicitly exposes the Plaintiff as a prostituted person as well as a victim of repeated sexual abuse. Requiring the Plaintiff to disclose her identity in public court records in order to assert her claims against the Defendants who facilitated her victimization through their willful ignorance to her plight only serves to further victimize the Plaintiff and compound the same harms she seeks to redress through this litigation.

The Plaintiff agrees to proceed through her initials, S.J., and does not object to providing her true full name and the name of her trafficker to the Defendants pursuant to an agreement barring further dissemination of that information and requiring that any documents containing her true name be filed under seal. Accordingly, granting the Plaintiff's motion will in no way prejudice the Defendants' ability to defend themselves in this litigation. In addition, the Plaintiff's substantial privacy interest regarding this deeply personal violation outweighs the public interest in needing to know her identity.

## ARGUMENT

Although a complaint must usually state the names of all parties pursuant to Fed. R. Civ. P 10(a), Courts have nevertheless "carved out a limited number of exceptions to the general requirement of disclosure, which permit plaintiffs to proceed anonymously." *Sealed v. Sealed 1*, 537 F.3d 185, 187 (2d Cir. 2008) citing *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). The Second Circuit embraces the balancing test employed by the Eleventh Circuit evaluating "whether the plaintiff has a substantial privacy right which

outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Aware Woman Ctr. for Choice, Inc.*, 253 F.3d at 685. The various Courts of Appeals have applied a number of specific factors in employing this balancing test. The district court must "exercise its discretion in the course of weighing competing interests" whilst using a factor-driven balancing approach. *Sealed*, 537 F.3d 185, 190 (2d Cir. 2008) citing *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993).

The factors from the "non-exhaustive" list of competing factors compiled by Second Circuit in *Sealed v. Sealed* 1, 537 F.3d 185, 190 (2d Cir. 2008) from the decisions of its sister Circuit Courts, which are relevant to the Plaintiff's application for anonymity include: (1) "whether the litigation involves matters that are 'highly sensitive and [of a] personal nature,' " *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *see also Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992), and *Jacobson*, 6 F.3d at 239 (4th Cir. 1993); (2) "whether identification poses a risk of retaliatory physical or mental harm to the…party [seeking to proceed anonymously]," *Jacobson*, 6 F.3d at 239 (4th Cir. 1993); (3) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure," *see Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068; (4) "whether identification presents other harms and the likely severity of those harms" including whether "the inquiry litigated against would be incurred as a result of the disclosure of the Plaintiff's identity," *Sealed*, 537 F.3d 185, 190 (2d Cir. 2008) citing *Advanced Textile Corp.*, 214 F.3d at 1068 and *Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); (5) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," *Doe v. Del Rio*, 241 F.R.D. 154, 157 ; and (6) "whether the defendant is prejudiced by allowing the plaintiff to press her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and

whether any prejudice can be mitigated by the district court," *see Advanced Textile Corp.*, 214 F. 3d at 1068. Balancing the factors above strongly favors protecting S.J. throughout the instant litigation with the use of a pseudonym.

## I.
## DISCLOSURE OF THE PLAINTIFF'S IDENTITY WOULD REVEAL INFORMATION THAT IS OF A HIGHLY SENSITIVE AND PERSONAL NATURE PUTTING HER AT A SUBSTANTIAL RISK OF DISCRIMINATION AND HARASSMENT

The Plaintiff has a substantial privacy right in guarding the sensitive information about her past abuse that she must disclose in the present sex trafficking litigation. "The issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant [...and] [o]f course privacy interests are recognized in particular circumstances to be in the public interest." *Zavaras*, 139 F.3d at 803. A plaintiff is only permitted to "proceed anonymously in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Frank*, 951 F.2d 320 (11th Cir. 1992)

The Plaintiff was only ten (10) years old when she was coerced into sexual servitude by a man that she met at a party in Brooklyn, New York. For three (3) years thereafter she was repeatedly beaten, berated, and forced to sexually service as many as twenty (20) men a day on the hotel premises owned by the above-named Defendants. Fortunately, S.J. is now able to live a drastically different life. However, inherent in publicly categorizing S.J. as a victim of sex trafficking is the revelation of her having been prostituted by her trafficker. While it is certainly misguided, a great deal of stigma and scrutiny follow such a disclosure. If her identity is revealed, the Plaintiff is likely to experience harm ranging from humiliation or other

discrimination to physical violence. Prostituted women have disturbingly low status in the field of public opinion regardless of how the situation came to pass. As one sex buyer in a research interview explained, "A prostitute is like having a cup of coffee, when you're done, you throw it out."[1] Women in prostitution are seen as body parts whose feelings are irrelevant. They are not considered fully human and as a result, women in prostitution are murdered at a higher rate than any other group of women ever studied.[2] And the public view of women in prostitution does not consider whether they are there or have been there as a result of sex trafficking.

The Second Circuit has explained that "the excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate," *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). One's transgender status is excruciatingly private and intimate in nature because it conveys sensitive information about one's body, medical history, and sexuality. The same applies to one's status as a victim of sex trafficking. In the limited facts averred by the Plaintiff in her Complaint and Demand for a Jury Trial she discloses the volume of men who had sexual intercourse with her, her capitulation to the demands of her trafficker out of fear and exhaustion, and the complete loss of her identity beyond that of a piece of her trafficker's property. Wherein someone has been so intimately violated, and so stripped of their dignity that it can incite violence toward them, that information is of a highly personal and sensitive nature.

---

[1] Melissa Farley et al, Comparing Sex Buyers with Men Who Do Not Buy Sex: New Data on Prostitution and Trafficking, Journal of Interpersonal Violence, (2015) 32 (3), 3601–25 at 3613
[2] Melissa Farley, The Risks of Prostitution: When the Person is the Product, Journal of the Association for Consumer Research, December 19, 2017, 3 (1) 97-108 at 99.

## II.
## DISCLOSING THE PLAINTIFF'S IDENTITY WOULD SUBJECT HER TO A SIGNIFICANT RISK OF RETALIATION BY HER TRAFFICKER OR OTHERS

The Plaintiff has a protected interest in guarding her personal safety against "a real danger of physical harm." *Frank*, 951 F.2d 320 (11th Cir. 1992) S.J. suffered *substantial* psychological and physical abuse at the hands of her trafficker and his associates. The Plaintiff's trafficker has never been arrested for the offenses he committed against S.J. or his other victims. As far as the Plaintiff is aware, her former trafficker is still at large. His apparent ability to retaliate has formed the Plaintiff's resulting vulnerability and uncertainty that fuels her debilitating fear. Further, the Plaintiff has been reluctant to engage in prolonged social interactions, choosing instead to "lay low," as an attempt to avoid retaliation since she escaped her trafficker in 2013. Notwithstanding this precaution, S.J. still has a credible fear that the facts disclosed in the instant litigation would cause her to be easily identifiable. Given the level of horrific abuse the Plaintiff suffered at the hands of her trafficker, her fear of his retaliation warrants acknowledgement.

## III.
## AS A VICTIM OF SEX TRAFFICKING THE PLAINTIFF IS PARTICULARLY VULNERABLE TO THE LIKELY HARMS OF DISCLOSURE

The Plaintiff is particularly vulnerable to the harms inherent in disclosure, not only in her fear of retaliation, but given her repeated past victimization. S.J. stands to suffer if her identity is released as a result of her seeking to hold those who knowingly benefitted from her exploitation accountable. In *Doe v. Stegall*, the Fifth Circuit weighed the "gravity of the danger posed by the threats of retaliation … in light of the special vulnerability of [the] child-plaintiffs." 653 F.2d 180, 186 (5th Cir. 1981) Survivors of sex trafficking who speak openly about the offenses that

they were subject to, explain that it took a lot of difficult work to reach that point.[3] Even at the most advanced stages of recovery many survivors are not willing to go public with their story. Survivors are just barely surviving, and are therefore uniquely vulnerable. They are struggling with "reliving the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by feelings of shame and guilt, thinking that they are living in hiding and unable to let themselves to truly be seen, and experiencing fleeting feelings of dignity and respect."[4] S.J. does not speak openly about her past victimization and instead tries to maintain the normal life she was so viciously deprived of. Because the Plaintiff is not open about her past, the disclosure of her true identity can decimate her recovery and the life she has built for herself.

Victims of sex trafficking are especially vulnerable in the current age of technology wherein every opinion waged is an opinion heard. Traffickers are experts in psychological manipulation, they use degrading and dehumanizing tactics to keep victims enslaved. To family and society, the victims are viewed as a disgrace. They are shamed as sluts and outcasts and this strong stigma keeps them in their place as they live on the margins of a society that has cast them out.[5] To subject S.J. to such unsolicited feedback, when all she seeks from the instant litigation is to come a step closer to being made whole again, is cruel and unduly burdensome.

## IV.
### DISCLOSURE OF THE PLAINTIFFS IDENTITY WOULD SUBJECT HER TO OTHER HARMS INCLUDING THE HARMS BEING LITIGATED

The insidiousness of the offense of sex trafficking is that the abusers steal from the victims their sense of privacy, autonomy, and normalcy. A litigation pursued under the TVPRA

---

[3] Ruth Rondon, *Understanding the 4 Stages of Recovering from Sex Trafficking*, Human Trafficking eLearning, (2017) 1- 7, 5. This guide is written by a well-published survivor of sex trafficking and is attached as Exhibit 1.
[4] *Id* at 3.
[5] *Id* at 4.

is an important step for survivors to recover what was taken from them. To demand that these survivors publicly disclose their identity and their history in order to pursue a legal opportunity statutorily provided to them specifically as victims of sex trafficking only continues to harm them. To require that the Plaintiff disclose her identity as a woman who has been imprisoned, beaten, and forced into prostitution only serves to again deprive her of privacy, autonomy, and normalcy.

## V.
### THERE IS AN ATYPICALLY WEAK PUBLIC INTEREST IN KNOWING THE IDENTITY OF THE PLAINTIFF, ALLOWING THE PRIVACY RIGHTS OF THE PLAINTIFF TO OUTWEIGH THE PRESUMPTION OF OPENNESS IN JUDICIAL PROCEEDINGS

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F. 2d 180 at 185 (5th Cir. 1981) "The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Richmond Newspapers, Inc. v. Virginia*, 448 US 555 (1980). The public interest is not harmed by allowing the Plaintiff to proceed anonymously, and the interest itself is an atypically weak one. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording victimized plaintiffs such as S.J. their day in court without the bullying of corporations who hope to deter her litigation through the force of identification. *See Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006). The enforcement of federal sex trafficking laws benefits the public, and the identification of the individual plaintiffs does little, if not nothing, to further community welfare. The particular

identity of Roe in Roe v. Wade has little bearing on the nature of the dispute or the merits of the case.

Instead, the greater public interest would be significantly harmed if identifying S.J., and other victims like her looking to pursue this cause of action provided by the TVPRA, resulted in an overall chilling effect upon all sex trafficking litigation. Sex trafficking is a growing epidemic that is already difficult to combat and understand because it is vastly underreported. Measures that may have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *See Advanced Textile*, 214 F. 3d at 1073. Denying victims of sex trafficking anonymity in the appropriate circumstances – such as here – would only further allow the offenders to continue without detection by the law as they have done for decades.

## VI.
## GRANTING THE PLAINTIFF'S MOTION WILL NOT COMPROMISE THE DEFENDANTS' ABILITY TO PRESENT A FULL DEFENSE

The Defendants would not be prejudiced if the Plaintiff's motion were granted. The Defendants are corporate entities that lack the vulnerability that the Plaintiff faces as a singular victim of repeated sexual abuse, particularly in an era where publicly-filed documents are easily searchable online. Anonymity in this case, as was proffered in *James v. Jacobson*, would be limited to the pseudonym that the Plaintiff uses, not to who she is in every other respect. 6 F.3d 233, 243 (4th Cir. 1993). As previously mentioned, S.J. is willing to provide further information, including her full name and the identity of her trafficker to the Defendants, and under a Protective Order.

## CONCLUSION

For the forgoing reasons, the Court should grant the Plaintiff's motion to file under the initials "S.J.," and should further order that all materials filed in the action, all judgments, and any other documents relating to the action shall refer to the Plaintiff as "S.J.," without additional identifying information, and grant such other and further relief as the Court deems just and proper under the circumstances.

**DOUGLAS & LONDON, P.C.**

By: _____
MICHAEL A. LONDON (ML-7510)
59 Maiden Lane, 6th Floor
New York, NY 10038
Ph: (212) 566-7500
Fax: (212) 566-7501
Email: mlondon@douglasandlondon.com