UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                       :

S.J., an individual,                      :
                                         :

                    Plaintiff,      :   **MEMORANDUM DECISION AND ORDER**

           - against -         :

                                         :   19-cv-6071 (BMC)

CHOICE HOTELS INTERNATIONAL, INC., *et al.*,   :
                                         :

                  Defendants.    :

------------------------------------------------------------ X

**COGAN**, District Judge.

       Plaintiff brings this action under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595; New York Social Services Law § 483-bb; and state negligence law, alleging that each of the defendants "knowingly benefited from facilitating a venture that they knew, or should have known, to be engaging in sex trafficking" at plaintiff's expense.  Defendants Choice Hotels International, Inc., Wyndham Hotels & Resorts, Inc., and Howard Johnson International, Inc. move to dismiss the complaint as to them for failure to state a claim upon which relief can be granted.  For the reasons set forth below, these defendants' motions to dismiss are granted for all claims but the one for negligence.

## BACKGROUND

       According to the second amended complaint, Plaintiff was trafficked for commercial sex for three years, beginning at the age of ten.  The identities of the traffickers are neither provided nor relevant in this proceeding.  At issue in this case are only the owners/operators of the individual hotels where the sex trafficking took place, and the franchisors/corporate brand owners of those same hotels.

Each defendant in this case is associated with one of two hotels operating in New York City, where plaintiff alleges she was primarily trafficked: an Econo Lodge in the Bronx ("Bronx Econo Lodge") and a Howard Johnson Inn in Queens ("Queens Howard Johnson")[1]:

Defendant Choice Hotels International ("Choice Hotels") is a hotel brand owner that franchised the Econo Lodge brand to the Bronx Econo Lodge.  Choice Hotels neither owns nor operates the Bronx Econo Lodge, but is alleged to control its training and policies as a condition for use of the brand name.  Moreover, Choice Hotels receives a percentage of the gross revenue generated by the Bronx Econo Lodge's operations, including from the rates charged on the rooms where plaintiff was trafficked.

Defendant Wyndham Hotels & Resorts, Inc. ("Wyndham") is likewise a hotel brand owner which, under its corporate umbrella, owns the separate Howard Johnson International, Inc. ("Howard Johnson, Inc.") hotel brand.  In turn, Wyndham and Howard Johnson, Inc. franchised the Howard Johnson brand to the Queens Howard Johnson.  Wyndham controls the training and policies for the Queens Howard Johnson and both Wyndham and Howard Johnson, Inc. are alleged to receive a percentage of the gross revenue generated by the Queens Howard Johnson's operations, including from the rates charged on the rooms where plaintiff was trafficked.

Plaintiff avers that, over the years during which she was trafficked, the two hotels' staff had regular contact with her and her principal trafficker, and had witnessed numerous signs of physical abuse and other obvious indicators of sex trafficking.  Some of the more dramatic examples of visible sex trafficking conduct include frequent unannounced male visitors to plaintiff's room; plaintiff's refusal of maid service yet repeated requests for linens and towels;

---

[1] The corporate owners of both hotels are defendants in this case – Jav, Inc. (Bronx Econo Lodge) and Shanta Hospitality LLC (Queens Howard Johnson).  Both have filed an answer to plaintiff's second amended complaint and are not presently moving to dismiss.

cash payment for hotel rooms; the presence of numerous used condoms in the rooms after checkout; plaintiff's inappropriate attire for her age; and the fact that plaintiff was commonly ferried to and from the hotels with a paper bag over her head.  Plaintiff further alleges that her sex trafficker forced her to perform sexual acts on certain hotel staff on numerous occasions as payment for the hotel rooms used for her trafficking.

In addition to the obvious signs of plaintiff's trafficking at the Bronx Econo Lodge and Queens Howard Johnson, plaintiff alleges that defendants Choice Hotels, Wyndham, and Howard Johnson, Inc. knew or should have known that sex trafficking often occurred on their branded properties, and thus had a legal duty to safeguard against it.  For instance, these corporate defendants partnered with End Child Prostitution and Trafficking ("ECPAT-USA") to develop employee training to identify sex trafficking in hotels, and there have been numerous news articles containing incidents of reported or confirmed sex trafficking on Econo Lodge and Howard Johnson Inn-branded properties across the country.  Nevertheless, plaintiff alleges, these corporate defendants failed to sufficiently train the hotels' staff in recognizing the signs of sex trafficking and what to do to prevent it from happening.

In consideration of the foregoing, plaintiff asserts that all defendants knew or should have known about her trafficking and that they all financially benefitted from her trafficking, in violation of the TVPRA and New York Social Services Law § 483-bb.  Plaintiff further claims that the corporate defendants (Choice Hotels, Wyndham, and Howard Johnson, Inc.) were negligent by failing to, *inter alia*, adequately distribute information to assist employees in identifying human trafficking; provide a process for elevating human trafficking concerns within the organization; and/or train staff on human trafficking and corporate responsibility issues.

Plaintiff further seeks to hold these corporate defendants vicariously liable for the negligence of the Bronx Econo Lodge and Queens Howard Johnson staff through an agency theory.  Specifically, plaintiff alleges that an agency relationship by virtue of the franchisors exercising an "ongoing and systemic right of control" over the franchisees, including by hosting online booking applications for the hotels; requiring the hotels to use the brands' customer rewards programs; setting employee wages; making certain employment decisions; advertising for employment; sharing profits; standardizing training methods for employees; requiring that individual hotel owners build and maintain the facility in a specified manner; standardizing rules of operation; conducting regular inspections of the hotel facilities; and fixing accommodation prices.

Corporate defendants Choice Hotels, Wyndham, and Howard Johnson, Inc. move to dismiss the claims against them, contending that they cannot be held liable under the TVPRA because they neither had actual knowledge of plaintiff's sex trafficking nor committed any overt acts of participation in the sex trafficking.  They further argue that New York Social Services Law § 483-bb, enacted in 2015, cannot be applied retroactively to the activity that caused plaintiff's injuries, which lasted from 2006 to 2009.  Finally, these defendants maintain that whatever supervisory role they may have over the Bronx Econo Lodge and Queens Howard Johnson does not establish an agency relationship giving rise to vicarious liability.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citations omitted).  Said otherwise, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In conducting the above analysis, a court must accept as true all of the well-pleaded allegations contained in the complaint. Iqbal, 556 U.S. at 678.  But this tenet "is inapplicable to legal conclusions." Id.  "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

## I.      TVPRA Claim

Defendants Choice Hotels, Wyndham, and Howard Johnson, Inc. argue that plaintiff has not stated a claim for relief against them under the TVPRA's civil liability provision, 18 U.S.C. § 1595.  Specifically, they contend that plaintiff has failed to plead all requisite categories of knowledge set forth in the statute.

Section 1595(a) of Title 18 provides:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Thus, liability under TVPRA requires that "(1) the person or entity must 'knowingly benefit, financially or by receiving anything of value,' (2) from participating in a venture, (3) that the 'person knew or should have known has engaged in an act in violation of this chapter.'"  See A.C. v. Red Roof Inns, Inc., 2020 WL 3256261, at *4 (S.D. Ohio June 16, 2020) (quoting 18 U.S.C. § 1595(a)).

At least one other court has required a civil plaintiff to also show that the person had knowledge of "some participation in the sex trafficking act itself."  See Noble v. Weinstein, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (quoting United States v. Afyare, 632 F. App'x 272, 285 (6th Cir. 2016)); see also Doe 1 v. Red Roof Inns, Inc., No. 19-cv-3840, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (quoting Noble, 335 F. Supp. 3d at 524)).  But the court so holding relied upon a criminal case (Afyare) that was analyzing 18 U.S.C. § 1591, and thus several courts have rejected this further element as inapplicable to a distinct – though similar – provision in § 1595(a).  See M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019); A.B. v. Marriott Int'l, Inc., No. 19-cv-5770, 2020 WL 1939678, at *12-13 (E.D. Pa. Apr. 22, 2020).  This latter course appears correct, not only because of the inherent differences between civil and criminal liability, but because Congress intended "to broaden the behavior that can form the basis of civil liability" when it amended the TVPRA in 2008.[2]  See M.A., 425 F. Supp. 3d at 964.

---

[2] The TVPRA of 2008 is the third iteration of this law.  First, "Congress passed the Trafficking Victims Protection Act of 2000 . . . [to] creat[e] criminal offenses for forced labor and sex trafficking."  A.B., 2020 WL 1939678, at *6.  Then, "[i]n 2003, Congress passed the Trafficking Victims Protection Reauthorization Act of 2003," which, among other amendments to the previously law, "created a civil right of action by victims of trafficking against their traffickers."  Id.  This version "provided a civil remedy against the trafficker only."  Id.  Finally, in the 2008 legislation, "Congress gave 'victims a cause of action against those who have profited from their exploitation.'"  Id. (quoting CHARLES DOYLE, CONG. RESEARCH SERV., R40190, THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008 (P.L.110-457): CRIMINAL LAW PROVISIONS (2009)).

The practical difference between criminal and civil liability is that the civil reading gives full expression to the "knew *or should have known*" language (emphasis added) of § 1595:

> The court in *Noble* . . . applied the "participation in a venture" element from the criminal offense defined by Congress in section 1591(a)(2).  The court in *Noble* did not address the "knew or should have known" language in the civil remedies defined in section 1595. . . .  [T]he court in *Noble* essentially required the victim of sex trafficking seeking a civil remedy to first prove a criminal violation of section 1591(a)(2).  And this is where we diverge from the judges in the Northern District of Georgia in the Red Roof cases and the Southern District of New York in *Noble*.

A.B., 2020 WL 1939678, at *13.  In effect, the broader understanding of § 1591 means that a person may be held liable if he *should have known* that he was facilitating a sex trafficking venture, even if his "participation [was] not direct participation in the sex trafficking."  See M.A., 425 F. Supp. 3d at 970.

Such a reading could, for example, reach the president of a primary school who had witnessed inappropriate contact between the head of the school and a student, and had also "shunned a[n] . . . administrator . . . after she tried to stop [further] sexual abuse" of other students.  See Jean-Charles v. Perlitz, 937 F. Supp. 2d 276, 280, 288 (D. Conn. 2013).  The court in Perlitz held that, "[v]iewed in the context of the allegations of the complaint as a whole, these allegations concerning [the president's] knowledge of [the school head's] wrongful activities raise a  plausible inference that he knew or should have known [the school] was violating § 1591."  Id. at 288.  And in a situation analogous to this case, § 1591 could reach a hotel whose staff members "rented rooms to people it knew or should have known w[ere] engaged in sex trafficking."  M.A., 425 F. Supp. 3d at 971.  As I have said above, this analysis seems correct under both the plain language of the statute and its legislative intent.

But plaintiff's proposed application of § 1595's "should have known" standard directly to the hotel franchisors goes one step too far.  Specifically, plaintiff argues that she "is only

required to show that Defendant[s] 'should have known' that sex trafficking was occurring on [their] property under a negligence standard."  However, to conclude that franchisors like Wyndham, Howard Johnson, Inc., and Choice Hotels are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between "should have known" and "might have been able to guess."  Indeed, under plaintiff's theory, the liability of franchisors – which are further removed from the sex trafficking than the actual hotels are – would be much easier proven than the liability of the hotels themselves.  This would make no sense.  If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under that same statute for having only an abstract awareness of sex trafficking in general.

The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture.  The statutory text speaks in singular terms – "participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter."  18 U.S.C. § 1595(a) (emphases added).  Therefore, knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA.  Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA.

Of course, this doesn't necessarily absolve the franchisors of the responsibilities they may have – under other statutes, their franchising contracts, or the common law – to train hotel

staff about the warning signs of sex trafficking and what to do if they appear.  But there is no basis to read such a responsibility into the text of the TVPRA.

Turning to vicarious liability, to the extent that plaintiff relies upon an agency theory to indirectly impose liability on the franchisor defendants under the TVPRA, that argument is foreclosed by New York agency law.[3]  Specifically, "[t]he general rule holds that a franchisee is not the agent of a franchisor." Nebraskaland, Inc. v. Sunoco, Inc. (R & M), No. 10-cv-1091, 2013 WL 5656143, at *5 (E.D.N.Y. Oct. 11, 2013) (citing Terrano v. Fine, 17 A.D.3d 449, 793 N.Y.S.2d 451 (2nd Dep't 2005)).  Of course, it is true that a franchisor may be held "accountable for the acts of its franchisee if the franchisor exercised such complete control over the day-to-day operations of the franchisee's business that its purported independence may be fairly dismissed as a fiction" or if it "exercised ultimate control over the instrumentality that caused harm to an injured third-party." Id.  But such complete control is a high standard, and one that is not met merely by, for example, alleging a franchisor's "right to terminate the agreement if it disapproved of the franchisee's conduct or its right to re-enter the premises." See Schoenwandt v. Jamfro Corp., 261 A.D.2d 117, 689 N.Y.S.2d 461 (1st Dep't 1999).  Moreover, alleging a franchisor's control over "uniformity and standardization across franchises" is likewise insufficient to establish the level of domination that would render a franchisee's independence a fiction. See Louis v. Jerome, No. 15-cv-3094, 2016 WL 4532115, at *4 (E.D.N.Y. Aug. 29, 2016) (citing Manos v. Geissler, 377 F. Supp. 2d 422, 429 (S.D.N.Y. 2005) ("Plaintiff has not alleged any facts that demonstrate that Midas 'exercised such complete dominion and control' that BRG lacked independent will.")).

---

[3] One court has suggested that because "the TVPRA is silent on the issue of indirect liability . . . the federal common law of agency should apply." See J.C. v. Choice Hotels Int'l, Inc., No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020).  However, none of the parties have indicated that any other law but that of New York should apply to the case.

As the court in <u>Louis</u> explained:

> Plaintiff's allegations regarding [the franchisor]'s "strict control" are generalized and refer to such issues as approval of the franchise location, setting of standards and operating procedures, reporting requirements, training, and software and technical support. These allegations pertain to uniformity and standardization across franchises, not day-to-day oversight. There is not a single specific allegation as to [the franchisor]'s daily activities or involvement at either Jerome's or Mathieu's franchise. Considering plaintiff's allegations in the light most favorable to her, she has not alleged that [the franchisor] exercised control over the daily operations of these franchises sufficient to impose liability upon the franchisor.

<u>Id.</u>

Plaintiff's allegations as to the franchisor defendants' control over the Bronx Econo Lodge and Queens Howard Johnson are similarly inadequate.  She avers generally that

- As a hotel operator, Defendant Choice Hotels controls the training and policies for its branded properties including the Econo Lodge hotel where S.J. was trafficked.

- Defendant Choice Hotels represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Choice Hotels brand standards and all local, state, and federal laws.

- As a hotel operator, Defendant Wyndham Hotels controls the training and policies for its branded properties including the Howard Johnson Inn hotel where S.J. was trafficked.

- Defendant Wyndham Hotels maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Wyndham brand standards and all local, state, and federal laws.

- At all relevant times Defendant Howard [Johnson] owned, supervised, and/or operated the Howard Johnson located at 153-95 Rockaway Boulevard, Jamaica, New York 11434 through a franchising agreement.

- As a hotel owner, operator and/or franchisor, Defendant Howard Johnson controlled the training and policies for their branded properties including the Howard Johnson hotel where S.J. was trafficked.

- [T]he Wyndham Defendants: (1) hosted the Howard Johnson Inn's online bookings on their domain; (2) required Howard Johnson Inn to use their customer rewards program; (3) set employee wages; (4) made employment decisions; (5) advertised for employment; (6) shared in the profits; (7) provided standardized training methods for Howard Johnson Inn's employees (8) specified how to build and maintain the facilities; (9) provided

standardized rules of operation; (10) regularly inspected their Howard Johnson Inn facility; (11) fixed prices; and (12) deprived the Howard Johnson Inn of independence in business operation.

As in <u>Louis</u>, plaintiff only sets forth facts tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand. Thus, to the extent that they aren't mere legal conclusions, these allegations, even if proven true, would fail to sufficiently demonstrate that the franchisor defendants exercised "such complete control over the day-to-day operations of the franchisee's business that its purported independence may be fairly dismissed as a fiction." <u>See</u> <u>Nebraskaland, Inc.</u>, 2013 WL 5656143, at *5.

## II.   New York Social Services Law § 483-bb Claim

Plaintiff also asserts a claim against defendants Choice Hotels, Wyndham, and Howard Johnson, Inc. pursuant to New York Social Services Law § 483-bb(c), which provides:

> An individual who is a victim of the conduct prohibited by section 230.33, 230.34, 230.34-a, 135.35 or 135.37 of the penal law may bring a civil action against the perpetrator or whoever knowingly advances or profits from, or whoever should have known he or she was advancing or profiting from, an act in violation of section 230.33, 230.34, 230.34-a, 135.35 or 135.37 of the penal law to recover damages and reasonable attorney's fees.

Wyndham and Choice Hotels point out, however, that the provision in § 483-bb that establishes a civil right of action only became effective on January 19, 2016. <u>Compare</u> 2007 Sess. Law News of N.Y. Ch. 74 (S. 5902), § 11, <u>with</u> 2015 Sess. Law News of N.Y. Ch. 368 (S. 7), § 30 (adding § 483-bb(c)). Because plaintiff's sex trafficking allegedly took place between 2006 and 2009, more than six years prior to January 19, 2016, defendants argue that this claim necessarily fails. I agree.

"It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." <u>Majewski v. Broadalbin-Perth Cent. School Dist.</u>, 91

N.Y.2d 577, 584, N.Y.S.2d 966, 968 (1998) (citing cases).  Furthermore, although "[a]n equally settled maxim is that 'remedial' legislation . . . should be applied retroactively, . . . [c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to supply some defect or abridge some superfluity in the former law."  Id. (*colatus*[4]).  In any event, this "remedial" exception "does not apply to statutes creating new rights and remedies where none previously existed," as is the case here.  Matter of Cady v. County of Broome, 87 A.D.2d 964, 965, 451 N.Y.S.2d 206, 207 (1982) (citing Jacobus v. Colgate, 217 N.Y. 235, 252 (1916) (Cardozo, J.)).

That the right of action created in 2016 is a *new* right vis-à-vis the indirect franchisors is made evident by reference to then-Judge Cardozo's discussion in Jacobus, cited above.  There, he explained that

> [t]here is a manifest and important difference between a statute which creates a new statutory right and a statute which prescribes a 'cause of action,' or remedy for an existing right. For example, a statute such as Lord Campbell's Act *which gave to the widow and next of kin of a person killed by the wrongful act of another the right to recover damages from the wrongdoer, conferred a right which did not exist at common law and it also prescribed a remedy by which that right might be enforced.* The present statute is different. Before this statute was passed our law, in common with the law of every civilized state, recognized that a trespass upon the real property of the owner and burning down the buildings thereon in whatever jurisdiction the property was situated constituted a wrong and that such a wrongful act violated the *right* of the owner and that the owner had a *right* to redress.

Jacobus, 217 N.Y. at 252 (first emphasis added).  Although a traditional right to sue one's own sex trafficker can't readily be disputed, the more attenuated ability to "bring a civil action against . . . whoever should have known he or she was advancing or profiting from" the sex trafficking is quite novel.  Indeed, the latter bears a striking resemblance to Judge Cardozo's

---

[4] I.e., edited citation.

example of a statute "which gave to the widow and next of kin of a person killed by the wrongful act of another the right to recover damages from the wrongdoer." Id. New York Social Services Law § 483-bb(c) went into effect only several years after the parallel TVPRA was enacted, and the Court cannot identify a long-standing common law right tantamount to the one plaintiff seeks to enforce under the statute against the franchisor defendants.

This claim is therefore dismissed.

### III.    Negligence Claim

Plaintiff's negligence claim against the franchisor defendants largely relies upon her conclusion that "at all relevant times, [they] exercised complete control over the propert[ies] where Plaintiff was trafficked." As was determined above, however, plaintiff falls short of sufficiently alleging an agency relationship between the franchisor and franchisee defendants. There is therefore no vicarious liability for negligence against these parties.

But plaintiff also contends that the franchisor defendants were directly negligent. Thus, to avoid dismissal, she must allege: (1) a duty owed to plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. See Skidd v. JW Marriot Hotels & Resorts, 06-cv1554, 2010 WL 2834890, at *4 (S.D.N.Y. July 8, 2010). The main obstacle in this regard – and the only one that defendants raise in their motions – is the duty prong. As an initial matter, there is state authority suggesting that, in some contexts, a franchisor may owe a duty of care to its franchisee's customer. In Pipitone v. 7-Eleven, Inc., 67 A.D.3d 879, 879, 889 N.S.S.2d 234, 235 (2nd Dep't 2009), for example, the Appellate Division held that the franchisor and out-of-possession tenant "had a duty to maintain the premises in a reasonably safe manner."

Perhaps more instructive for our purposes, in Cullen v. BMW of N. Am., 691 F.2d 1097, 1100-01 (2d Cir. 1982), the Second Circuit directly considered a franchisor's "duty to supervise

the operation of [its franchisee] and to terminate the franchise" to protect prospective customers.[5] In that case, a customer sued an automobile distributor franchisor after the franchisee's president and majority owner "had stolen and absconded with [the customer's] money." Id. at 1098.  The Court explained that, when determining whether a duty is owed, there is "a well-established principle that foreseeability of injury is an indispensable requisite of negligence, and that negligence exists only when there is a reasonable likelihood of danger as the result of the act complained of." Id.  at 1101.  It then held that the district court erred in determining that the franchisor owed a duty of care to the customer because "it could not reasonably have anticipated the crimes committed by [the franchisee]'s principal." Id.

The dissent in Cullen attacked the decision primarily because it believed that that the injury was foreseeable, and so the franchisor had a common law duty in relation to the customer. Id. at 1101-03 (Oakes, J., dissenting).  Reaffirming, first, that New York has long defined duty with relation to foreseeability, see Palsgraf v. Long Island R.R., 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928) (Cardozo, J.) ("The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension."); Macpherson v. Buick Motor Co., 217 N.Y. 382, 394, 111 N.E. 1050, 1054 (1916) (Cardozo, J.) ("[F]oresight of the consequences involves the creation of a duty."), the dissent went on to criticize the majority opinion's conclusion that the harm was not foreseeable simply because it was a result of "an intervening act, tortious or criminal." Cullen, 691 F.2d at 1102 (Oakes, J., dissenting):

> But New York law provides, as the common law of England before it provided,
> that "the criminal conduct of a third person [does] not preclude a finding of
> 'proximate cause' if the intervening agency was itself a foreseeable
> hazard." *Nallan v. Helmsley-Spear, Inc.,* 50 N.Y.2d 507, 520–21, 407 N.E.2d 451,

---

[5] Of relevance to the previous discussion on vicarious liability, "[t]he district court concluded that an actual agency relationship did not exist between [the franchisor] and [franchisee]." Cullen, 691 F.2d at 1100 n.6.

459, 429 N.Y.S.2d 606, 614 (1980); *Scott v. Shepherd,* 96 Eng.Rep. 525, 526 (C.P. 1773) ("The intermediate acts of Willis and Ryal will not purge the original tort in the defendant. But he who does the first wrong is answerable for all the consequential damages.").

Id.

To be sure, the majority did not actually disagree with this point of doctrine, as it qualified its statement of the duty rule by saying that "an intervening act . . . will *ordinarily* insulate a negligent defendant from liability when the subsequent act could not have been reasonably anticipated." Cullen, 691 F.2d at 1101 (emphasis added). Accordingly, the majority was careful to frame its conclusion of non-duty on a factual basis, holding that the franchisor's awareness of certain risk factors offered "no cause reasonably to anticipate that Eichler would either engage in any criminal activity or that he would abscond with customer funds." Id. The difference between the two opinions was therefore a matter of evidentiary degree, not of the legal possibility of a franchisor's duty to a third party.

Our case does not suffer from the subtlety of facts at issue in Cullen. The existence of a duty here is undoubtedly more defined, both because the franchisor defendants have previously acknowledged the foreseeability – indeed, the continuation – of sex trafficking in their franchisees' hotels, and also in light of their outspoken commitment to prevent child sex trafficking going forward. The palpable foreseeability of plaintiff's sex trafficking is thus sufficient to satisfy me that the corporate defendants owed plaintiff a duty in this case.

**CONCLUSION**

Choice Hotels, Wyndham, and Howard Johnson, Inc.'s [24, 40, 57] motions to dismiss

are granted in part and denied in part as set forth above.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
        July 20, 2020

16