Case 1:19-cv-06071-BMC Document 34 Filed 03/13/20 Page 38 of 99 PageID #: 348
1429

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------X
```
S.J., an individual;

                Plaintiff,

      -against-

CHOICE HOTELS INTERNATIONAL, INC.,
WYNDHAM HOTELS & RESORTS, LLC d/b/a
HOWARD JOHNSON INN and WYNDHAM HOTELS
AND RESORTS, LLC d/b/a HOWARD JOHNSON INN,
WYNDHAM HOTELS & RESORTS, INC., JAV, INC.,
HOWARD JOHNSON INTERNATIONAL, INC.,
SHANTA HOSPITALITY LLC;

                Defendants.
```
------------------------------------------------X
```

**CASE NO: 1:19-cv-06071-BMC**

**THIRD AMENDED
COMPLAINT AND
JURY DEMAND**

Plaintiff, by her attorneys, **DOUGLAS & LONDON, P.C.**, upon information and belief,

at all times hereinafter mentioned, allege as follows:

### THIRD AMENDED COMPLAINT

COMES NOW the Plaintiff S.J., by and through the undersigned counsel, and respectfully

submits her complaint for damages and makes the following averments.

### INTRODUCTION

1. For years, sex trafficking ventures have brazenly operated in and out of hotels throughout

this country. Criminals parade their misconduct openly on hotel properties throughout the United

States while the hotels and hospitality industry remain willfully blind to the criminal misconduct

to continue earning a profit at the expense of human life, human rights, and human dignity.

2. Choice Hotels International, Inc. (hereinafter "Choice Hotels"), Wyndham Hotels &

Resorts, Inc., (hereinafter "Wyndham Hotels"), Jav, Inc., Howard Johnson International, Inc.,

(hereinafter "Howard Johnson"), Shanta Hospitality LLC (hereinafter "Shanta") (collectively

Case 1:19-cv-06071-DG-PK Document 105 Filed 04/08/23 Page 2 of 34 PageID #:
1430
Case 1:19-cv-06071-BMC Document 34 Filed 03/13/20 Page 38 of 99 PageID #: 348

"Defendants") know and have known that sex trafficking repeatedly occurs under their flag throughout the country. Rather than taking timely and effective measures to thwart this epidemic, Defendants have instead chosen to ignore the open and obvious presence of sex trafficking on their properties, enjoying the profit from rooms rented for this explicit and apparent purpose.

3.  Human trafficking is the world's fastest growing crime.  While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of *all* illegal drugs. Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

4.  This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials S.J., under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

5.  S.J. was first trafficked for commercial sex at just 10 years old.

6.  For years thereafter S.J. was required to sexually service strangers who paid her trafficker as she endured brutal physical assaults, psychological torment, verbal abuse, and false imprisonment at the Defendants' hotels for a prolonged period of time, as the Defendant did nothing but profit.

7.  The Plaintiff now brings this action for damages against the Defendants listed herein.  Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from facilitating a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b).

8.  As a direct and proximate result of Defendants' consistent refusals to prevent human trafficking on their hotel properties, S.J. was sex trafficked, sexually exploited, and victimized repeatedly at Choice and Wyndham brand hotels.

Case 1:19-cv-06071-DG-PK   Document 105   Filed 04/08/23   Page 3 of 34 PageID #:
1431
Case 1:19-cv-06071-BMC   Document 34   Filed 03/13/20   Page 38 of 99 PageID #: 848

9. The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §1595, against the Defendants as set forth herein who enabled, facilitated, and financially benefited from a sex trafficking venture in which S.J. was trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. §1591 (a) and (b).

**PARTIES**

10. The Plaintiff, herein, identified by her initials S.J., was just 10 years old when she was first sold for commercial sex. The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102 (11)(a) and 18 U.S.C. §1591 (a) and (b), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14). The Plaintiff currently resides in Brooklyn, New York.

11. Defendant Choice Hotels International, Inc. ("Choice Hotels") is one of the largest hotel brands in the world. It is a Delaware corporation with its principal place of business located at 1 Choice Hotels Circle, Suite 400, Rockville, Maryland 20850.

12. Econo Lodge is a Choice Hotels brand property.

13. At all relevant times Choice Hotels owned, supervised, and/or operated the Econo Lodge located at 1000 Baychester Avenue, Bronx, New York, 10475.

14. As a hotel operator, Defendant Choice Hotels controls the training and policies for its branded properties including the Econo Lodge hotel where S.J. was trafficked.

15. Defendant Choice Hotels represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Choice Hotels brand standards and all local, state, and federal laws.

16. Through its relationship with the staff at the Econo Lodge hotel where S.J. was trafficked and the perpetrators who trafficked S.J. at Econo Lodge hotels while registered as a guest there, Defendant Choice Hotels knowingly benefited or received something of value from its facilitation

Case 1:19-cv-06071-DG-PK Document 105 Filed 04/08/23 Page 4 of 34 PageID #:
Case 1:19-cv-06071-BMC Document 34 Filed 03/13/20 Page 38 of 99 PageID #: 346
1432

of or participation in a venture which it knew or should have known had engaged in sex trafficking.

17. Choice Hotels receives a percentage of the gross room revenue from the money generated by the operations of Econo Lodge hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

18. As a hotel owner, operator and/or franchisee, Defendant Jav, Inc. controlled the Econo Lodge hotel where S.J. was trafficked.

19. Through its relationship with the staff at the Econo Lodge hotel where S.J. was trafficked and the perpetrators who trafficked S.J. at Econo Lodge hotels while registered as a guest there, Defendant Jav, Inc. knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

20. Defendant Jav, Inc. received a percentage of the gross room revenue from the money generated by the operations of its Econo Lodge hotel, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

21. Wyndham Hotels & Resorts, Inc., ("Wyndham Hotels") is one of the largest hotel brands in the world. It is a Delaware corporation with its principal place of business located at 22 Sylvan Way, Parsippany, New Jersey 07054.

22. Defendants Wyndham Hotels & Resorts, Inc. is the successor entities to Wyndham Worldwide Corporation.

23. Defendants Wyndham Hotels & Resorts, Inc. retained successor liability for wrongful acts of its predecessor Wyndham Worldwide Corporation.

24. Defendant Howard Johnson International Inc. is a wholly-owned subsidiary of Defendant Wyndham Hotels & Resorts, Inc.

25. Howard Johnson Inn is a Wyndham Hotels brand property.

26. As a hotel operator, Defendant Wyndham Hotels controls the training and policies for its

branded properties including the Howard Johnson Inn hotel where S.J. was trafficked.

27. Defendant Wyndham Hotels maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Wyndham brand standards and all local, state, and federal laws.

28. Through its relationship with the staff at the Howard Johnson Inn hotel where S.J. was trafficked and the perpetrators who trafficked S.J. at the Howard Johnson Inn hotel while registered as a guest there, Defendant Wyndham Hotels knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

29. Wyndham Hotels receives a percentage of the gross room revenue from the money generated by the operations of Howard Johnson Inn hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

30. Wyndham Hotels owned, supervised, and/or operated the Howard Johnson Inn located at 153-95 Rockaway Boulevard, Jamaica, New York 11434.

31. At all relevant times Defendant Howard owned, supervised, and/or operated the Howard Johnson located at 153-95 Rockaway Boulevard, Jamaica, New York 11434 through a franchising agreement.

32. As a hotel owner, operator and/or franchisor, Defendant Howard Johnson controlled the training and policies for their branded properties including the Howard Johnson hotel where S.J. was trafficked.

33. Through its relationship with the staff at the Howard Johnson hotel where S.J. was trafficked and the perpetrators who trafficked S.J. at the Howard Johnson hotel while registered as a guest there, Defendant Howard Johnson knowingly benefited or received something of value from their facilitation of or participation in a venture which they knew or should have known had

engaged in sex trafficking.

34. Defendant Howard Johnson received a percentage of the gross room revenue from the money generated by the operations of Howard Johnson branded hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

35. At all relevant times Defendant Shanta owned, supervised, and/or operated the Howard Johnson located at 153-95 Rockaway Boulevard, Jamaica, New York 11434 pursuant to a franchising agreement.

36. As a hotel owner, operator and/or franchisee, Defendant Shanta controlled the Howard Johnson hotel where S.J. was trafficked.

37. Through its relationship with the staff at the Howard Johnson hotel where S.J. was trafficked and the perpetrators who trafficked S.J. at the Howard Johnson hotel while registered as a guest there, Defendant Shanta knowingly benefited or received something of value from its facilitation of or participation in a venture which they knew or should have known had engaged in sex trafficking.

38. Defendant Shanta received a percentage of the gross room revenue from the money generated by the operations of the Howard Johnson branded hotel, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

39. Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

43

Case 1:19-cv-06071-BMC Document 34 Filed 03/13/20 Page 38 of 99 PageID #: 948
1435

## JURISDICTION AND VENUE

40. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000.)

41. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including Defendant's misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

42. Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

43. Sex trafficking ventures are prohibited by federal criminal law. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590. The crime of slavery can be divided into two (2) elements: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

44. Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

45. Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide *or* obtain commercial

44

Case 1:19-cv-06071-DG-PK Document 105 Filed 04/08/23 Page 8 of 34 PageID #:
Case 1:19-cv-06071-BMC Document 34 Filed 03/13/20 Page 38 of 99 PageID #: 348
1436

sex that was provided or obtained through force, fraud, and coercion or from a person under the age of 18 years old are guilty of sex trafficking.  This includes, at a minimum, ***both*** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work *and* the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

## **FACTUAL ALLEGATIONS**

### **A.  THE HOSPITALITY INDUSTRY'S PARTICIPATION IN THE SEX TRAFFICKING INDUSTRY**

46.  The hospitality industry plays a crucial role in the sex trade. The trope of the "no-tell hotel" is certainly not a new one. Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

47. According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

48.  Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex. This is referred to as an 'in call'.

49. Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction. Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.  In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.

50. The problem is industry wide. In the United States, as much as 63% of all trafficking

incidents happen in hotels ranging from luxury to economy.

51. Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking. Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

52. Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

53. But aside from their unique position in this epidemic, hotels have one of the highest obligations to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

54. Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry. The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry to help hotel staff in every position to identify the signs.

55. From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

56. The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

57. End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004. The Code identifies the following six (6) steps companies can take to prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

58. In November 2010, Choice Hotels partnered with ECPAT-USA to develop a training module to educate its management and staff in the prevention of sex trafficking. However, Defendant Choice did not enforce the program, or require its employees to complete this training, or even follow up to make sure the hotels were following the protocols.

59. In 2011, Wyndham Hotels predecessor entity Wyndham Worldwide Corporation, signed the Code and that same year trained only *some* of its employees to look for signs of trafficking.

60. In 2012, an anti-trafficking coalition alerted Defendants Choice Hotels of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.

61. Further, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of

47

Homeland Security's Blue Campaign. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.

62. Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies. Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

**B.  THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY**

63. Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or third-party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract or membership agreement and still profits from putting heads in beds.

64. However, the average consumer does not see this relationship. The parent brand gives the franchisee property its entire identity. It provides signage on and in front of the building that assures customers that if they check into that hotel, they can expect the standards consistent with the parent hotel brand. The same brand emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

65. In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the franchise hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website. This is so that booking and room reservations, the source of profits for the entire industry, are controlled by the corporate parent

48

Case 1:19-cv-06671-PKC Document 34 Filed 05/13/20 Page 38 of 55 PageID #: 346

brand.

66. The franchise hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required by the brand to develop and maintain the property in accordance with the parent hotel brand's standards as they are laid out in the franchise agreement.

67. Per the franchise agreement, the parent brand may enforce these standards through periodic audits, inspections, and termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

68. At the time of the incidents alleged herein:

    a. Defendant Choice Hotels International, Inc. owned and controlled the Econo Lodge brand.

    b. Defendant Jav, Inc., pursuant to a franchising agreement, owned, controlled and operated the Econo Lodge property were Plaintiff was trafficked.

    c. Defendant Wyndham Hotels & Resorts, Inc. owned and controlled the Howard Johnson brand.

    d. Defendants Howard Johnson and Shanta owned, controlled and operated the Howard Johnson property were Plaintiff was trafficked.

69. At the time of the incidents alleged herein all Defendants knew or should have known that illegal activities, including sex trafficking ventures, were taking place on the Econo Lodge property and the Howard Johnson property where Plaintiff was trafficked.

70. While parent hotel brands may kick delinquent hotels out of their system, they seldom do because it is at the expense of terminating their royalty payments. Even an inadequate or dangerous hotel under the parent hotel brand's flag generates more revenue than no hotel.

## C.  THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTELS

71. Defendants Wyndham Hotels & Resorts, Inc., Howard Johnson International, Inc., Shanta Hospitality LLC, Choice Hotels International, Inc., and Jav, Inc. (collectively "Defendants") have been on notice of repeated incidences of sex trafficking occurring at their Howard Johnson and Econo Lodge branded hotels respectively, yet these owners, franchisors, franchisees, brand managers and/or supervisors failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at their hotels.

72. Upon information and belief, despite knowledge of the problem of sex trafficking in their hotels, Defendants did not require that employees participate in training to recognize, report and prevent sex trafficking.

73. WYNDHAM HOTELS & RESORTS, INC., HOWARD JOHNSON INTERNATIONAL, INC., SHANTA HOSPITALITY LLC.:

a. Defendant Wyndham Hotels owned, supervised, and/or operated the Howard Johnson located at 153-95 Rockaway Boulevard, Jamaica, New York 11434. Defendant Wyndham Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff S.J. from being sex trafficked.

b. Defendant Howard Johnson International, Inc. owned, supervised, and/or operated the Howard Johnson located at 153-95 Rockaway Boulevard, Jamaica, New York 11434. Defendant Howard Johnson failed to implement and enforce any of its own policy or policies and protect Plaintiff S.J. from being sex trafficked.

c. Defendant Shanta Hospitality LLC owned, supervised, and/or operated the Howard Johnson located at 153-95 Rockaway Boulevard, Jamaica, New York 11434. They failed to implement and enforce any policies and protect Plaintiff S.J. from being

50

Case 1:19-cv-06671-PKC Document 34 Filed 05/13/20 Page 38 of 55 PageID #: 1442

sex trafficked.

d. Defendants Wyndham Hotels, Howard Johnson and Shanta knew or should have known that the Howard Johnson hotel where Plaintiff S.J. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff S.J. was trafficked.

e. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendants Wyndham Hotels, Howard Johnson and Shanta repeatedly failed to stop these actions.

f. Defendant Wyndham Hotels and Defendant Howard Johnson could have exercised control over its Howard Johnson branded hotels by:

   i. distributing information to assist employees in identifying human trafficking;

   ii. providing a process for escalating human trafficking concerns within the organization;

   iii. requiring employees to attend training related to human trafficking;

   iv. providing new hire orientation on human rights and corporate responsibility;

   v. providing training and education to Howard Johnson branded hotels through webinars, seminars, conferences, and online portals;

   vi. developing and holding ongoing training sessions on human trafficking; or

   vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g. Wyndham Hotels was in an agency relationship with Howard Johnson branded

51

hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Wyndham Hotels' exercise of an ongoing and systemic right of control over Howard Johnson hotels by Defendant Wyndham Hotels' operations, including the means and methods of how Howard Johnson branded hotels conducted daily business through one or more of the following actions:

   i. hosting online bookings on Defendant Wyndham Hotels' domain;

   ii. requiring Howard Johnson branded hotels to use Defendant Wyndham Hotel's customer rewards program;

   iii. setting employee wages;

   iv. making employment decisions;

   v. advertising for employment;

   vi. sharing profits;

   vii. standardized training methods for employees;

   viii. building and maintaining the facility in a manner specified by the owner;

   ix. standardized or strict rules of operation;

   x. regular inspection of the facility and operation by owner;

   xi. fixing prices; or

   xii. other actions that deprive Howard Johnson branded hotels of independence in business operations.

h. An apparent agency also exists between Defendant Wyndham Hotels and Defendants Howard Johnson and Shanta and the Howard Johnson branded hotels. Defendant Wyndham Hotels held out Howard Johnson branded hotels to the public as possessing authority to act on its behalf.

i. Given Defendant Wyndham Hotel's and Howard Johnson's public statements on

52

Case 1:19-cv-06071-PBMC Document 34 Filed 05/13/20 Page 38 of 55 PageID #: 1444

behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Howard Johnson branded hotels, Defendant Wyndham Hotels and Defendant Howard Johnson breached its duties in the following ways:

    i.   did not adequately distribute information to assist employees in identifying human trafficking;

    ii.   failed to provide a process for escalating human trafficking concerns within the organization;

    iii.   failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv.   failed to provide new hire orientation on human rights and corporate responsibility;

    v.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.   failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii.   failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.   Defendants Wyndham Hotels, Howard Johnson and Shanta knew or should have known that sex trafficking ventures were occurring on their properties, including the Howard Johnson property where Plaintiff was trafficked, but Defendant Wyndham Hotels failed to take any steps to prevent and/or stop the sex trafficking of Plaintiff.

53

k.  In the instance of Plaintiff S.J., had the hotel staff been properly trained, many of the human trafficking red flags would have been recognized and reported. But Defendants Wyndham Hotels, Howard Johnson and Shanta chose not to invest the time and resources to implement and execute any anti-trafficking programs and/or protocols.

l.  For years, Defendant Wyndham Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Howard Johnson branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S.J. at Howard Johnson hotels that forms the basis of this complaint.

    i.  In June 2015, Gloucester Township police found human trafficking suspects and victims, along with fully loaded assault rifles and hard drugs at a Howard Johnson Express Inn Hotel (reported by NJ.com).

    ii.  In October 2017, a Monroe County Man was federally indicted for sex trafficking at a Bartonsville, Pennsylvania Howard Johnson Hotel (reported by The Morning Call).

    iii.  In April 2017, at the Howard Johnson Hotel in Queens, New York, six people were arrested and charged with prostitution during an apparent sting operation (reported by Gothamist).

    iv.  In February 2017, at the Queens Howard Johnson Inn, seven women and one man were arrested on prostitution charges related to human trafficking (reported by Gothamist).

    v.  In April 2018, at a Howard Johnson hotel in Brownsville, Brooklyn, a couple allegedly forced two 14-year-old runaways to have sex with man

54

after man and give up all their earnings (reported by NY Post).

74. CHOICE HOTELS INTERNATIONAL, INC., and JAV, INC.:

    a.  Defendant Choice Hotels owns, supervises, and/or operates the Econo Lodge located at 1000 Baychester Avenue, Bronx, New York, 10475.

    b.  Defendant Jav, Inc. owns, supervises, and/or operates the Econo Lodge located at 1000 Baychester Avenue, Bronx, New York, 10475.

    c.  Defendant Choice Hotels could have exercised control over Econo Lodge hotels and over Defendant Jav, Inc. by:

        i.  distributing information to assist employees in identifying human trafficking;

        ii.  providing a process for escalating human trafficking concerns within the organization;

        iii.  requiring employees to attend training related to human trafficking;

        iv.  providing new hire orientation on human rights and corporate responsibility;

        v.  providing training and education to Econo Lodge branded hotels through webinars, seminars, conferences, and online portals;

        vi.  developing and holding ongoing training sessions on human trafficking; or

        vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

    d.  Choice Hotels was in an agency relationship with Defendant Jav, Inc. and the Econo Lodge branded hotels offering public lodging services in the hotel. This

agency relationship was created through Defendant Choice Hotel's exercise of an ongoing and systemic right of control over Econo Lodge hotels by Defendant Choice Hotel's operations, including the means and methods of how Econo Lodge branded hotels conducted daily business through one or more of the following actions:

    i.   hosting online bookings on Defendant Choice Hotels' domain;

    ii.   requiring Econo Lodge branded hotels to use Defendant Choice Hotels' customer rewards program;

    iii.   setting employee wages;

    iv.   making employment decisions;

    v.   advertising for employment;

    vi.   sharing profits;

    vii.   standardized training methods for employees;

    viii.   building and maintaining the facility in a manner specified by the owner;

    ix.   standardized or strict rules of operation;

    x.   regular inspection of the facility and operation by owner;

    xi.   fixing prices; or

    xii.   other actions that deprive Econo Lodge branded hotels of independence in business operations.

75. An apparent agency also exists between Defendant Choice Hotels and Defendant Jav, Inc. Defendant Choice Hotels held out Econo Lodge branded hotels to the public as possessing authority to act on its behalf.

76. Defendants Choice Hotels and Jav, Inc. knew or should have known that sex trafficking ventures were occurring on its properties, including the Econo Lodge property where Plaintiff was

trafficked, but Defendants failed to take any steps to prevent and/or stop the sex trafficking of Plaintiff.

77. In the instance of Plaintiff S.J., had the hotel staff been properly trained, many of the human trafficking red flags would have been recognized and reported. But Defendants Choice Hotels and Jav, Inc. chose not to invest the time and resources to implement and execute any anti-trafficking programs and/or protocols.

78. Given Defendant Choice Hotel's public statements on behalf of their hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Econo Lodge branded hotel where Plaintiff was trafficked, Defendant Choice Hotels breached its duties in the following ways:

    a. did not adequately distribute information to assist employees in identifying human trafficking;

    b. failed to provide a process for escalating human trafficking concerns within the organization;

    c. failed to mandate managers, employees, or owners attend training related to human trafficking;

    d. failed to provide new hire orientation on human rights and corporate responsibility;

    e. failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    f. failed to develop and hold or require ongoing training sessions on human trafficking; or

    g. failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human

57

trafficking prevention.

79. For years, Defendants Choice Hotels and Jav, Inc. have demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its properties, including the Econo Lodge branded property where Plaintiff was trafficked. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff S.J. at Econo Lodge hotels that forms the basis of this complaint.

    a. In June 2014, two people were arrested and charged with the human trafficking of 16 & 17-year-old girls in Tallahassee, Florida. There were also two other violent confrontations at the Econo Lodge in Tallahassee involving women working as prostitutes (reported by the Tallahassee Democrat).

    b. In August 2016, in Ann Arundel County, Maryland, three people were indicted for a large-scale human trafficking enterprise operated from dozens of hotel rooms around Maryland, including an Econo Lodge (reported by Capital Gazette).

    c. In February 2018, the first lawsuit in Harris County, Texas was filed against varying hotels, including Econo Lodge, for the sex trafficking of minors (reported by the Daily Kos).

    d. In July 2019, the accused leader of a human trafficking and drug ring was found and arrested with $12,000 and suspected cocaine at a Monroe Econo Lodge (reported by the Detroit Free Press).

### D. THE SEX TRAFFICKING OF S.J.

80. The facts alleged herein stem from a sex trafficking ring operating in Queens, New York and Bronx, New York. While victimized by her trafficker in New York, S.J. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Defendants' hotels from approximately 2006-2009.

Case 1:19-cv-06671-DG-RK Document 105 Filed 04/08/22 Page 22 of 34 PageID #:
Case 1:19-cv-06671-PBMC Document 34 Filed 05/13/20 Page 38 of 55 PageID #: 348
1450

81. In 2006, at just 10 years old, S.J., a native of New York met her trafficker at a party. At the party, S.J.'s trafficker promised her that he would protect and care for her, as he does for "all of his girls."

82. S.J.'s trafficker took advantage of her vulnerability by preying on the young girl's normal desire for attention and approval and gaining her trust by taking her out for meals and shopping trips, and offering her life advice and the promise that she could be a part of their family.

83. S.J. was required by her trafficker to have sex for payment, with various buyers that he arranged for at the Defendants' hotels without her consent. S.J.'s trafficker kept all of her (and his other girls') earnings, telling them that they weren't responsible enough to keep it.

84. S.J.'s trafficker ferried her to and from the Defendants' hotels with a paper bag over her head to sexually service the various buyers waiting for her. It was made clear to S.J. that physical harm would be inflicted upon her if she questioned her trafficker or did not do exactly as she was told. S.J.'s trafficker would threaten to kill any girls who asked questions.

85. S.J.'s trafficker controlled her by making her dependent on him financially, keeping her high on an assortment of drugs to keep her awake and compliant, and routinely punishing her with physical violence every time she did not conform to his abundant rules. S.J. was prohibited from speaking to clients.

86. S.J. was forced to perform commercial sex acts on approximately 15 men a day (and sometimes even servicing as many as 20.) She was instructed to do whatever the client wanted and let them leave without any conversation. When S.J. didn't want to work or do what was requested by her clients she would be beaten by her traffickers.

87. Over the years S.J. was in his captivity, S.J.'s trafficker and his recruiter would prepare and transport S.J. and the other girls to rooms rented for them to service the pre-arranged buyers. Each buyer entered and exited the rooms as unannounced guests.

59

Case 1:19-cv-06071-PKC Document 34 Filed 05/13/20 Page 38 of 35 PageID #: 348

88. The Econo Lodge was a small two story building with a large wrap around parking lot that serviced an additional back exit.  The reception and lobby area were also small and easily observed in their entirety.

89.  S.J. and the other girls would then stay at the Econo Lodge for approximately three days at a time. S.J.'s trafficker always paid for the room in cash and would sometimes require the girls to sexually service hotel staff in lieu of his payment for the rooms.

90. S.J.'s trafficker also routinely ordered the girls takeout Chinese food delivery that they would have to pick-up at the front desk when they were kept at the Econo Lodge. They would appear tired and detached because they couldn't leave their rooms until they were done servicing buyers and were strictly prohibited from speaking. At both the Econo Lodge and the Howard Johnson, S.J.'s trafficker always refused room service yet would call if he needed towels. The room was frequently left with numerous used condoms scattered across various surfaces at the end of the stay.

91. At the Econo Lodge, when condoms ran out, S.J.'s trafficker would demand his girls continue sexually servicing the buyers without them. To avoid this, S.J. and the other girls would sneak off to the front desk where there was a bowl of free condoms displayed and would dump the bowl into an ice bucket to bring back to the rooms.

92. The employees at the Econo Lodge property, that was owned, controlled and operated by Defendants Choice Hotels and Jav, Inc., knew or should have known that S.J. was being trafficked because of her young age, inappropriate attire and outward signs of physical abuse, however they failed to take any steps to prevent S.J. from being sex trafficked on their property.

93. The Howard Johnson is a small two-story hotel with a number of side and rear exits. The lobby is also small with signs posted by the reception desk indicating that the premises are under 24-hour surveillance.

Case 1:19-cv-06671-PBMC Document 34 Filed 05/13/20 Page 38 of 35 PageID #: 348

94. Each buyer entering the Howard Johnson hotel, that was owned controlled and/or operated by Defendants Wyndham Hotels, Howard Johnson and Shanta, was a non-paying guest and left shortly after they arrived. The foot traffic to the rooms was constant and voluminous.

95. The hotel employees witnessed the large number of non-paying male guests that were constantly arriving and leaving S.J.'s hotel room, however they failed to take any steps to report and/or investigate this constant and voluminous foot traffic.

96. S.J.'s trafficker paid in cash for numerous rooms along the same stretch of hallway and at the end of each evening abundant used condoms were scattered across the rooms. There was regular repeated contact directly between her traffickers and the hotel staff.

97. On several occasions, S.J.'s trafficker injured her so badly that she knew it was noticeable to the public and to the hotel and housekeeping staff.

98. The employees at the Howard Johnson property, that was owned, controlled and operated by Defendants Wyndham Hotels, Howard Johnson and Shanta knew or should have known that S.J. was being trafficked because of her young age, inappropriate attire and outward signs of physical abuse, however they failed to take any steps to prevent S.J. from being sex trafficked on their property.

99. Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive notice of drug dealing, prostitution, and/or general safety concerns at their hotels, including, but not limited to, video surveillance of their hotels, as well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

100. Had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of S.J.

Case 1:19-cv-06071-PBMC Document 34 Filed 05/13/20 Page 38 of 35 PageID #: 346

101. The Defendants were in the best position to prevent the trafficking of S.J. by ensuring that its hotel staff was properly trained to observe and report any signs of sex trafficking that was occurring on their hotel properties.

102. If the Defendants had implemented policies to recognize, report and/or prevent sex trafficking on their properties, Plaintiff S.J. would not have been trafficked on Defendants' properties.

### E. THE DEFENDANTS FACILITATED THE TRAFFICKING OF S.J.

103. The Defendants profited from the sex trafficking of S.J. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to S.J.'s traffickers, when they knew, or should have known, that he was using their room to imprison S.J., physically assault her, and subject her to repeated exploitation as he forced her into sexual servitude.

104. The Defendants knew, or should have known, that S.J. was being trafficked and that the Defendants were knowingly benefiting financially from said exploitation, because S.J.'s trafficker frequented the Defendants' hotels.

105. The Defendants knew, or should have known, that S.J. was being trafficked because S.J. was constantly entertaining male traffic to appease her traffickers' daily quotas, her traffickers would check her in, and she never spoke to staff; behavior that indicated they were using the Defendants' hotels for his illegal sex trafficking venture.

106. The Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging to S.J.'s trafficker in which to harbor S.J. while he was trafficking her.

107. The Defendants profited from the sex trafficking of S.J. and knowingly or negligently aided and participated with S.J.'s trafficker in his criminal venture. The Defendants

took no action as S.J. repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and often displaying prominent bruising and injuries all over her person.

108. The Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from S.J. in which to harbor S.J. while she was being trafficked.

109. The Defendants all had the opportunity to stop S.J.'s trafficker and offenders like him from victimizing S.J. and others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

110. The Defendants all financially benefited from the sex trafficking of S.J., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

111. The Defendants enjoyed the steady stream of income that sex traffickers bring to their budget level hotel brands, such as Econo Lodge and Howard Johnson hotels where Plaintiff was trafficked.

112. The Defendants financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

113. The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties.

114. The Defendants failed to train their hotel staff how to take appropriate measures to alert the authorities when sex trafficking was suspected, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation of victims, such as S.J., on their hotel properties.

115. The Defendants maintained their deficiencies to maximize profits by:

a. Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

b. Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

c. Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation;

116.     As a direct and proximate result of the forgoing practices on the part of the Defendants, S.J. has suffered and will continue to suffer economic loss, and has otherwise been emotionally and economically injured. Plaintiff S.J.'s injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual damages from the Defendants as alleged herein.

**FIRST CAUSE OF ACTION**

**VIOLATION OF 18 U.S.C §1595 ("TVPRA") AS TO DEFENDANT FRANCHISEES ONLY**

117.     The Plaintiff S.J. incorporates each foregoing allegation.

118.     S.J. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and(b) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

119.     The Defendant franchisees acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a) or (b).  At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of

64

S.J. for the

purposes of commercial sex induced by force, fraud, or coercion, or from a person younger than the age of 18 years old, by their acts, omissions, and commissions.

120. The Defendant franchisee have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade. Moreover, the Defendants directly benefitted from the trafficking of S.J. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of S.J.'s injuries and damages.

121. Defendant franchisee Jav, Inc. financially benefited from revenue the Econo Lodge hotel derived from renting rooms to S.J. and/or her traffickers.

122. Defendant franchisee SHANTA financially benefited from revenue the Howard Johnson hotel derived from renting rooms to S.J. and/or her traffickers.

123. For the reasons set forth herein, Plaintiff, S.J. suffered and will continue to suffer substantial economic, physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591.

124. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SECOND CAUSE OF ACTION - NEGLIGENCE

132. The Plaintiff S.J. incorporates each foregoing allegation.

133. The Defendants had a duty to use reasonable care to select, train, supervise, and retain its employees working at the hotels on the properties, including but not limited to, proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation in or about

Case 1:19-cv-06071-DG-RK Document 105 Filed 04/08/22 Page 29 of 34 PageID #:
Case 1:19-cv-06071-PBMC Document 34 Filed 05/13/20 Page 38 of 55 PageID #: 348
1457

hotels.

134. Defendants had a duty to use reasonable care to ensure the safety and security of guests at their hotels, including S.J.

135. Defendants breached their duty and did not implement and/or enforce any anti- human trafficking policies that could have saved Plaintiff from being sex trafficked at its Econo Lodge and Howard Johnson properties. Upon information and belief, at the time of the of the incidents alleged herein, Defendant Choice Hotels was in an agency relationship with Defendant Jav, Inc. and the Econo Lodge property where Plaintiff was trafficked, and offered public lodging services in the hotel.

136. Defendant Choice Hotels exercised ongoing and systemic control over operations sufficient to establish an agency relationship with the Econo Lodge hotels and Defendant Jav, Inc.

137. Upon information and belief, at the time of the of the incidents alleged herein, Defendant Wyndham Hotels was in an agency relationship with Defendant Howard Johnson and Defendant Shanta and the Howard Johnson property where Plaintiff was trafficked, and offered public lodging services in the hotel.

138. Defendant Wyndham Hotels exercised ongoing and systemic control over operations sufficient to establish an agency relationship with the Howard Johnson hotels.

139. Throughout this time period, as outlined above, the Defendants and/or their actual and/or apparent agents, servants, and/or employees', repeatedly failed to observe and report signs of guest misconduct at their hotels and/or properties, including, but not limited to, signs of human trafficking and or sexual exploitation taking place on the premises. Furthermore, upon information and belief, the Defendants, and/or their actual and/or apparent agents, servants, and/or employees', repeatedly failed to warn their customers, including S.J. of said trafficking.

140. Additionally, prior to the incidents alleged herein, the Defendants failed to properly train

66

Case 1:19-cv-06671-PBMC Document 34 Filed 05/13/20 Page 38 of 55 PageID #: 346

their employees and agents regarding security and the detection of guest misconduct in their hotels and on their properties, including, but not limited to, signs of human trafficking and sexual exploitation.

141. The Defendants breached this duty of care by acts, omissions, and commissions including, but not limited to:

    a. Failure to adequately train, supervise, audit, and retain employees and franchisees to ensure proper monitoring of surveillance cameras at their hotels and properties for signs of human trafficking and/or sexual exploitation.

    b. Failure to adequately train, supervise, audit, and retain employees and franchisees to ensure proper monitoring of the number of guests in each room of their hotels, and non-guest visitors in their hotels or on their properties.

    c. Failure to ensure, provide, and/or train adequate security in their hotels and/or on their properties with the knowledge that said premises had a history of trafficking;

    d. Failure to adequately train, supervise, audit, and retain employees and franchisees, to ensure proper monitoring of their hotels for signs of dangerous conditions including, but not limited to, human trafficking, sexual exploitation, and rape, by ignoring any combination of the following conditions:

        i. The repeated refusal of maid service;

        ii. The repeated, almost exclusive, use of side or rear exits for ingress and egress.

        iii. The number and frequency of visitors entering and exiting the hotel and/or property;

        iv. Guests present in any particular room in excess of the room's capacity;

        v. Signs of the repeated verbal abuse, physical abuse, restraint and/or

Case 1:19-cv-06071-DG-RK Document 105 Filed 04/08/22 Page 31 of 34 PageID #:
Case 1:19-cv-06071-PBMC Document 34 Filed 05/13/20 Page 38 of 35 PageID #: 348
1459

confinement of an individual by another;

vi. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vii. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire; and

viii. The repeated renting of specific rooms in the hotel and/or presence on the property.

e. Failure to adequately train, supervise, audit, and retain employees and franchisees, to ensure proper monitoring of their hotels and their properties for signs of suspicious behavior on the premises, which would have alerted the Defendants to the sex trafficking of S.J. including, but not limited to loud noises and sounds of distress coming from rooms and areas in the hotel and/or on the property, the odor of drugs emanating from rooms and areas in the hotel and/or on the property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or on the property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to adequately train, supervise, audit, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure the investigation of suspicious behavior at their hotel and/or properties which would have alerted the Defendants to the sex trafficking of S.J;

g. Failure to adequately train, supervise, and retain its actual and/or apparent agents,

servants and/or employees, including, but not limited to, training to ensure proper reporting to law enforcement of signs of guest misconduct at their hotels and/or on their properties, including, but not limited to human trafficking and sexual exploitation;

h. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure a timely response and investigation into guest complaints regarding suspicious behavior at their hotels and/or on their properties, which would have resulted in their discovery of the sex trafficking of S.J.;

i. Failure to provide adequate security and take reasonable steps to protect S.J.; and

j. Being otherwise careless and negligent.

142. Plaintiff's action is also timely under N.Y.C.P.L.R. § 214-g, which provides that "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, . . . which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired . . . is hereby revived"

143. Defendants actions and/or omissions permitted and allowed sexual offenses to occur to the then minor plaintiff as defined in New York Penal Law Article 130 including but not limited to Sections 130.00, 130.05, 130.20, 130.40, 130.45, 130.50, 130.52. 130.55, 130.60, 130.65, 130.75 130.80 and defendants otherwise allowed and permitted violations

69

of the penal law.

144. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendants, S.J. was repeatedly and consistently sexually abused in violation of N.Y. PENAL § 130.20, 130.30 and 130.35, and was otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendants' hotels and the Defendants failed to prevent or thwart such horrible acts. The imminent harm described above, as well as S.J.'s injuries, were a foreseeable and preventable result of the Defendants' negligence.

145. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of S.J.'s injuries and damages.

146. For the reasons set forth herein, Plaintiff, S.J. suffered and will continue to suffer substantial economic, physical and psychological injuries as the result of being sexually abused at the Defendants' hotels and properties in violation of N.Y. PENAL § 130.20, 130.30 and 130.35

147. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1. Awarding compensatory damages to Plaintiff for past and future damages for the described losses with respect to each cause of action, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2. For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will

70

be transferred for trial;

3.   Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the

Defendants who demonstrated a complete disregard and reckless indifference for the safety and

welfare of the general public and to the Plaintiff in an amount sufficient to punish defendants and

deter future similar conduct;

4.   Awarding Plaintiff reasonable attorney's fees;

5.   Awarding Plaintiff the costs of these proceedings; and

6.   Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 8, 2022

**DOUGLAS & LONDON, P.C.**

**By:** */s/ Randolph Janis*
Randolph Janis
59 Maiden Lane, Floor 6
New York, NY 10038
Ph: (212) 566-7500
Fax: (212) 566-7500

**rjanis@douglasandondon.com**

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all issues.

*/s/ Randolph Janis*
Randolph Janis